1
2
3
4
5
6
7



FILED & ENTERED

FEB 06 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum       DEPUTY CLERK

8      **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA**

10     **LOS ANGELES DIVISION**

11     In re                                          Case No. 2:11-bk-30931-RK

12     **SUSAN ANN GARDNER**,                          Chapter 7

13             Debtor.                                 Adv. No. 2:11-ap-02646-RK

14

15

16     **BRIGHT CARE PET SERVICES, INC.**,            **MEMORANDUM DECISION ON
                                                        ADVERSARY COMPLAINT TO**
17             Plaintiff,                             **DETERMINE DISCHARGEABILITY OF
                                                        DEBT AND TO BAR DISCHARGE**
18     vs.

19     **SUSAN ANN GARDNER**,

20             Defendant.

21

22

23            This adversary proceeding was tried before the undersigned United States

24     Bankruptcy Judge on October 19 and December 10, 2012, on the complaint of plaintiff

25     Bright Care Pet Services, Inc. ("Bright Care") to determine dischargeability of debt and to

26     bar the discharge of defendant Susan Ann Gardner ("Ms. Gardner") pursuant to Sections

27     523(a)(4) and 727(a)(4)(A) of the Bankruptcy Code, 11 U.S.C.  Michael W. Binning, of the

28     Law Office of Michael W. Binning, appeared on behalf of Bright Care.  Catherine Denevi

1   and Helane A. Simon, of Simon & Denevi, Attorneys at Law, appeared on behalf of Ms.

2   Gardner.

3       At the close of the evidence, the court ordered the parties to submit their closing

4   arguments in written form.  Both parties filed their closing briefs on December 19, 2012.

5   The court makes the following findings of facts based on facts previously determined in

6   the court's joint pretrial order ("JPTO"), entered on May 31, 2012 as well as facts

7   determined on the evidence admitted at trial.

8                                **FACTUAL BACKGROUND**

9       On October 1, 2008, Ms. Gardner purchased from Dr. Joel Rumm, president and

10  sole shareholder of Bright Care, the assets of "Doggie in the Window," a pet supply and

11  pet grooming business previously operated by Bright Care located at 4106 East Anaheim

12  Street, Long Beach, California ("4106 E. Anaheim").  JPTO at 2, ¶ 4; Trial Declaration of

13  Joel Rumm at 1, ¶ 2.

14      As part of consideration for the purchase, Ms. Gardner executed a promissory

15  note in the principal sum of one hundred fifty thousand dollars ($150,000) in favor of

16  Bright Care (the "$150,000 note").  The $150,000 note provided for interest at the rate of

17  8% per annum, and that Ms. Gardner pay Bright Care monthly payments of $1,819.91,

18  commencing November 1, 2008.  JPTO at 2, ¶ 5.  On October 1, 2008, Ms. Gardner

19  executed a security agreement in favor of Bright Care, securing its obligations under the

20  $150,000 note (the "Security Agreement").  The Security Agreement granted Bright Care

21  a security interest in the furniture, fixtures, equipment, supplies, inventory, appliances,

22  cash, bank accounts, accounts receivable, trade name, and leasehold interest in the

23  premises at 4106 E. Anaheim (the "Collateral").  JPTO at 2, ¶ 6.

24      Ms. Gardner conducted business under the fictitious trade name "Doggie in the

25  Window" at 4106 E. Anaheim until July 11, 2010.  JPTO at 2, ¶ 7.  On or about July 11,

26  2010, Ms. Gardner moved out of the premises at 4106 E. Anaheim and started a new

27  business at 3636 East Anaheim Street, Long Beach, California 90804 ("3636 E.

28

1  Anaheim"),[1] where on July 12, 2010, she conducted a pet supply and pet grooming

2  business under the fictitious trade name "Lara's Pet Grooming."  JPTO at 2, ¶ 10.

3  On August 26, 2010, Bright Care filed a lawsuit against Ms. Gardner in the

4  Superior Court of the State of California, County of Los Angeles, case number

5  NC055004, seeking the unpaid balance due under the $150,000 note.  On January 24,

6  2011, judgment was entered in favor of Bright Care and against Ms. Gardner in the

7  amount of $161,747.48.  JPTO at 2-3, ¶ 8.

8  On May 13, 2011, Ms. Gardner filed a voluntary petition for relief under Chapter 7

9  of the Bankruptcy Code.  As of the petition date, Ms. Gardner still operated Lara's Pet

10  Grooming and owned equipment, inventory, and supplies that she used in conducting this

11  business.  JPTO at 3, ¶¶ 10-11.  On Ms. Gardner's Schedule B, she did not disclose that

12  she owned this equipment, inventory, and supplies.  JPTO at 3, ¶¶ 12-16.  Ms. Gardner

13  amended her schedules on October 13, 2011 to include "Cages, dryers and grooming

14  equipment" and "Dog and cat food/supplies as assets."  JPTO at 3, ¶¶ 17-19.

15  On August 18, 2011, Bright Care commenced this adversary proceeding by filing a

16  complaint against Ms. Gardner, seeking a declaration that the debt based on the state

17  court judgment of $161,747.48 be deemed non-dischargeable pursuant to 11 U.S.C.

18  § 523(a)(4), and seeking to bar Ms. Gardner's discharge pursuant to 11 U.S.C.

19  § 727(a)(4)(A) for omissions made on her original schedules.  On September 26, 2011,

20  Ms. Gardner filed an answer to the complaint, denying most of the substantive allegations

21  of the complaint.

22

23

24

_____

25  [1] As discussed below, the court finds that the evidence presented at trial establishes that Ms. Gardner did
    not, in fact, take substantially all of the assets of Doggie in the Window to the new location at 3636

26  E. Anaheim, although this was a stipulated fact in the pretrial order submitted by the parties.  *See*
    JPTO at 2, ¶ 10; Trial Testimony of Susan Gardner, October 19, 2012, at 12:05-12:07 p.m.; Trial

27  Testimony of Anna Mendoza, October 19, 2012, at 11:04-11:12 a.m.

28

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and (b)(1) and (2)(I) and 1334.  Venue is proper in this judicial district.  This adversary proceeding is a core matter.

Having considered the testimony and other evidence admitted at trial and the oral and written arguments of the parties, the court now takes the matter under submission and issues this memorandum decision.  As discussed herein, the court rules in favor of Ms. Gardner and against Bright Care on all claims of the complaint.

**DISCUSSION**

**I.    11 U.S.C. § 523(a)(4)**

In its first claim under § 523(a)(4), Bright Care alleges that the debt owed by Ms. Gardner is excepted from discharge because she embezzled its collateral by moving her business to 3636 E. Anaheim and by taking substantially all of the assets of Doggie in the Window, including the Collateral.  Complaint at 3, ¶ 10-11.

Section 523(a)(4) provides that a discharge "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  Embezzlement has been defined as "the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come."  *Moore v. United States*, 160 U.S. 268, 269 (1885).  A debt can be nondischargeable for embezzlement under § 523(a)(4) without the existence of a fiduciary relationship.  *Transamerica Commercial Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991).  To establish a claim for nondischargeability of debt based on embezzlement, the Ninth Circuit has stated that a creditor must establish three elements:

(1) property rightfully in the possession of a nonowner;

(2) nonowner's appropriation of the property to a use other than which [it] was entrusted;

(3) circumstances indicating fraud.

4

1 *In re Littleton*, 942 F.2d at 555 (citations omitted); *First Delaware Life Insurance Co. v.*

2 *Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997).  The plaintiff in this debt

3 dischargeability action must prove each of these elements by a preponderance of the

4 evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

5 It is undisputed that the Collateral was rightfully in the possession of Ms.

6 Gardner—a non-owner for purposes of § 523(a)(4)—as of July 11, 2010, the date she

7 moved her business from 4106 E. Anaheim to 3636 E. Anaheim.  *See* JPTO at 2, ¶¶ 6-7.

8 At trial, Dr. Joel Rumm testified that Ms. Gardner took all of the Collateral to the

9 new location at 3636 E. Anaheim, including $21,095.25 in accounts receivable.  Trial

10 Declaration of Joel Rumm at 4, ¶ 4; 5, ¶ 17.  Dr. Rumm testified that, based on his

11 knowledge of the inventory and equipment that Ms. Gardner had on hand at the 4106 E.

12 Anaheim location during 2010, he believed that she moved inventory for re-sale with a

13 cost basis of between $10,000 and $15,000 to the 3636 E. Anaheim location, and that

14 she moved property used for dog grooming worth over $5,000.  *Id.* at 5, ¶ 16; Trial

15 Testimony of Joel Rumm, October 19, 2012, at 9:59 a.m.  Dr. Rumm testified on cross-

16 examination that the 4106 E. Anaheim property was sold to a purchaser in October 2010,

17 and the last time he visited the property—in October 2010—he noticed that some

18 leashes, bathtubs, grooming tables were left at the property, but he could not recall how

19 much of each items were left in the shop.  Trial Testimony of Joel Rumm, October 19,

20 2012, at 9:38-9:54 a.m.  Dr. Rumm testified that Ms. Gardner had taken the "majority of

21 the inventory," but he could not recall how much she allegedly took. Trial Testimony of

22 Joel Rumm, October 19, 2012, at 9:41-9:43 a.m.

23 Dr. Rumm testified that he asked Ms. Gardner to return the items she took during

24 the week of July 13, 2010, that the parties met in the parking lot of Doggie in the Window

25 in order for Ms. Gardner to return the key to the premises to Dr. Rumm, that Ms. Gardner

26 refused to return the missing items, that she told him that he would have to take legal

27 action to evict her and that he did take legal action to evict Ms. Gardner.  Trial Testimony

28 of Joel Rumm, October 19, 2012, at 10:00–10:02 a.m.

Ms. Gardner testified that she did not move the Collateral from 4106 E. Anaheim to 3636 E. Anaheim, and that the only items she took to the 3636 E. Anaheim location were expired dog food, which she donated to an animal shelter.  Trial Declaration of Susan Gardner at 7, ¶ 37; Trial Testimony of Susan Gardner, October 19, 2012, at 12:07-12:09 p.m.; *see also,* Trial Testimony of Anna Mendoza, October 19, 2012, at 11:07 a.m.; Trial Testimony of Mary Gardner, October 19, 2012, at 11:19-11:20 a.m.  Ms. Gardner testified that she turned over possession of the premises and the assets of Doggie in the Window left there to Dr. Rumm by visiting his office and handing him the key to the premises at 4106 E. Anaheim, leaving the inventory and equipment of the business there.  Trial Testimony of Susan Gardner, October 19, 2012, at 12:05-12:07 p.m.  Ms. Gardner's testimony is corroborated by the testimony of her store clerk, Anna Mendoza ("Ms. Mendoza").  Ms. Mendoza helped Ms. Gardner move from Doggie in the Window to Lara's Pet Grooming in July 2010.  Trial Declaration of Anna Mendoza at 1, ¶ 10.  Ms. Mendoza testified that she was familiar with which items belonged to Dr. Rumm, and which belonged to Ms. Gardner.  *Id.* at ¶ 11.  Ms. Mendoza stated that, during the move, she and Ms. Gardner left all of Dr. Rumm's grooming supplies at Doggie in the Window at the premises at 4106 E. Anaheim.  *Id.* at ¶ 18.  Ms. Mendoza also testified that she and Ms. Gardner left other items at Doggie in the Window, including leashes.  Trial Testimony of Anna Mendoza, October 19, 2012, at 11:04-11:12 a.m.  *See also* Defendant's Exhibit M.  After the move was complete, Ms. Gardner purchased tables, brushes, and kennels for the new location.  Trial Testimony of Anna Mendoza, October 19, 2012, at 11:07 a.m.

Ms. Gardner's testimony that she did not move the Collateral from 4106 E. Anaheim is also supported by the testimony of La Donna Pozos ("Ms. Pozos"), who was a frequent customer of Doggie in the Window while Ms. Gardner owned the business and before, which was on a regular basis for about fifteen years.  Trial Testimony of La Donna Pozos, December 10, 2012, at 2:09 p.m.  Ms. Pozos testified that after Ms. Gardner had vacated Doggie in the Window and moved to Lara's Pet Grooming, Ms. Pozos had occasion to visit the premises of Doggie in the Window and that around July 2011, her

roommate Richard Reza—an employee of Dr. Rumm during 2010—told her to go to

Doggie in the Window and feel free to take things that were left over from when Dr.

Rumm cleaned out the 4106 E. Anaheim location.  Trial Testimony of La Donna Pozos,

December 10, 2012, at 2:11-2:13 p.m.; *see also* Trial Testimony of Joel Rumm, October

19, 2012, at 9:35-9:36 a.m.  Ms. Pozos testified that she visited Doggie in the Window at

4106 E. Anaheim and noticed a number of items left over in the business, including metal

dog dishes, gallon containers of water, cat and dog toys, and bathtubs.  Trial Testimony

of La Donna Pozos, December 10, 2012, at 2:11-2:13 p.m.; *see also,* Trial Testimony of

Joel Rumm, October 19, 2012, at 9:35-9:39 a.m.  Ms. Pozos testified that she took some

dog dishes as well as some dog and cat toys.  *Id.*

    Ms. Pozos testified that subsequently, she found similar items in her home garage

in large amounts, specifically, when she went into her garage, she saw two-to-three

boxes of leashes, one box of dog costumes, and one box of Christmas ornaments, all of

which had "Doggie in the Window" labels.  Trial Declaration of La Donna Pozos at 10,

¶ 6; Trial Testimony of Ladonna Pozos, December 10, 2012, at 2:14 p.m.; *see also*

Defendant's Exhibit N.  Ms. Pozos testified that Richard Reza had brought these items to

their house earlier.  Trial Testimony of La Donna Pozos, December 10, 2012, at 2:18

p.m.  Ms. Pozos testified that when she testified asked Richard Reza why these items

were in the garage, he told her that his employer, Dr. Rumm, asked him to take the

inventory because the tenant from Doggie in the Window had vacated the building.  Trial

Declaration of La Donna Pozos at 10, ¶ 4.

    Having heard and considered the conflicting testimony of the witnesses and

evaluated their credibility, the court finds that Ms. Gardner did *not* take the Collateral from

4106 E. Anaheim to 3636 E. Anaheim, that she did not ever refuse to give any of it back

to Dr. Rumm, and that she turned over the Collateral to him when she voluntarily turned

over possession of the premises to him when she handed over the key to the premises to

him.  The court finds that Ms. Gardner's testimony that she left the Collateral on the

premises of Doggie in the Window, that she did not take it to her new location and that

1   she voluntarily turned over the premises of Doggie in the Window to Dr. Rumm was

2   credible and was supported by third-party witnesses, Ms. Mendoza and Ms. Pozos,

3   whose testimony the court also finds credible.  The only property Ms. Gardner took from

4   Doggie in the Window was expired dog food that she donated to an animal shelter, which

5   was of minimal value, and this does not otherwise indicate fraud because she

6   erroneously thought the food was hers since she bought for the business, apparently

7   overlooking Bright Care's lien to secure the loan for the purchase of the business that

8   attached to after-acquired property in the business.  Trial Testimony of Susan Gardner,

9   October 19, 2012, at 12:07-12:09 p.m.  The court finds that Dr. Rumm's testimony that

10  Ms. Gardner took the Collateral is not credible because he could not remember specific

11  items or amounts of inventory or equipment that Ms. Gardner allegedly took from Doggie

12  in the Window and he admitted that he found grooming equipment and other items on

13  site when he repossessed the premises of Doggie in the Window after the eviction

14  lawsuit.   There was no dispute in the testimony of Ms. Gardner and Dr. Rumm that they

15  met and she attempted to turn over the key to the premises of Doggie in the Window after

16  she vacated the premises and that he brought an eviction lawsuit against her to evict her

17  from the premises, but the testimony differed in that she said that she gave him the key

18  and he said that he did not take the key due to a disagreement and that he had to

19  formally sue her for eviction.  Regardless of any dispute over this minor factual detail, the

20  weight of the evidence, including the testimony of Ms. Gardner and other witnesses,

21  chiefly, Ms. Mendoza and Ms. Posas, shows that Ms. Gardner did not take the Collateral

22  from the premises of Doggie in the Window when she vacated the premises and started a

23  new business at another location.  Somehow, much of the inventory ended up with Mr.

24  Reza, who gave some to Ms. Posas.  The court is persuaded by Ms. Gardner's testimony

25  and the testimony of other witnesses that Ms. Gardner had nothing to do with Mr. Reza

26  eventually possessing many inventory items of Doggie in the Window, which was Bright

27  Care's collateral.

28

1    Based on the evidence admitted at trial, the court concludes that Bright Care has

2 failed to prove by a preponderance of the evidence that Ms. Gardner appropriated Bright

3 Care's property, the Collateral, to a use other than which it was entrusted or that the

4 circumstances indicate fraud.  The court further concludes that Bright Care's claim under

5 11 U.S.C. § 523(a)(4) should be denied.

6 **II.    11 U.S.C. § 727(a)(4)(A)**

7    In its second claim under § 727(a)(4)(A), Bright Care alleges that as of the petition

8 date, Ms. Gardner "knowingly and fraudulently made a false oath or account by failing to

9 disclose that she owned inventory, fixtures, equipment and supplies that were used in the

10 operation of Lara's Pet Grooming."  Complaint at 4, ¶ 20.  On Ms. Gardner's Schedule B,

11 she did not disclose that she owned this equipment, inventory, and supplies.  JPTO at 3,

12 ¶¶ 12-16.

13    A debtor may be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) if she

14 "knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or

15 account."  To prevail on this claim, the plaintiff must demonstrate, by a preponderance of

16 the evidence, that:

17    (1) the debtor made a false oath in connection with the case;

18    (2) the oath related to a material fact;

19    (3) the oath was made knowingly; and

20    (4) the oath was made fraudulently.

21 *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010), *citing inter alia*, *Roberts*

22 *v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005).  The plaintiff as the party

23 objecting to the debtor's discharge "must show that the information was omitted for the

24 specific purpose of perpetrating a fraud and not simply because the debtor was careless

25 or failed to fully understand his attorney's instructions."  *Kavanagh v. Leija (In re Leija)*,

26 270 B.R. 497, 501 (Bankr. E.D. Cal. 2001) (citation omitted).  Indeed, the "very purpose

27 of . . . § 727(a)(4)(A) is to make certain that those who seek the shelter of the bankruptcy

28 code do not play fast and loose with their assets or with the reality of their affairs."  *In re*

1  *Leija*, 270 B.R. at 501, *citing*, *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.

2  1987).  However, "a reckless indifference to the truth is sufficient to sustain an action for

3  fraud." *In re Leija*, 270 B.R. at 501 (citation omitted).

4         There is no dispute that Ms. Gardner did not list the Collateral—consisting of

5  equipment, inventory, accounts receivable, and supplies—that she used in operating

6  Doggie in the Window, in her original bankruptcy schedules when she filed her

7  bankruptcy petition.  *JPTO* at 3, ¶¶ 10-16.  However, as discussed above, the evidence

8  received at trial indicates that she did not remove the Collateral from the premises at

9  4106 E. Anaheim, and that the only items she took that were not originally hers were

10 expired dog food containers.  Ms. Gardner testified that she brought all of her personal

11 grooming supplies (i.e., clippers, etc.) with her when she moved locations, and that she

12 purchased everything else she needed for Lara's Pet Grooming.  Trial Declaration of

13 Susan Gardner at 6, ¶ 32.  She also received donations.  Trial Declaration of Susan

14 Gardner at 6, ¶ 36.  Thus, the only potential grounds for Bright Care's claim objecting to

15 Ms. Gardner's discharge under 11 U.S.C. § 727(a)(4)(A) are her failure to list as assets

16 on her original schedules "cages, dryers and grooming equipment" and "dog and cat

17 food/supplies," as well as the expired dog food she admittedly took from Doggie in the

18 Window.

19         **A. False Oath**

20         Black's Law Dictionary defines "oath" as a "solemn declaration . . . that one's

21 statement is true . . . ." *Black's Law Dictionary* at 1176 (9th ed. 2009).  Rule 1008 of the

22 Federal Rule of Bankruptcy Procedure requires that all bankruptcy petition papers,

23 including schedules, be "verified or contain an unsworn declaration as provided in 28

24 U.S.C. § 1746."  An unsworn declaration must be signed by the declarant under penalty

25 of perjury and is recognized to have "like force and effect" as a sworn verification, oath, or

26 affidavit.  28 U.S.C. § 1746.

27         As part of her bankruptcy petition, Ms. Gardner signed Schedule B to the

28 bankruptcy petition under penalty of perjury on May 13, 2011.  When Ms. Gardner

amended her schedules on October 13, 2011, she added "Cages, dryers and grooming equipment" in the amount of $500 and "Dog and cat food/supplies" in the amount of $600 as assets.  JPTO at 3, ¶¶ 17-19.  Ms. Gardner, thus, made an oath on her original schedules which was false because she did not originally list those items as personal property on the schedules, and the evidence indicates she owned those items as of the petition date.  However, as Ms. Gardner testified at trial, she donated the expired dog food from Doggie in the Window to an animal shelter, so this property was not owned by her when she filed the bankruptcy petition and is not at issue here.

**B. Oath Related to a Material Fact**

An oath relates to a material fact if the fact "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property."  *In re Retz*, 606 F.3d  at 1198, *citing*, *Khalil v. Developers Surety & Indemnity Co. (In re Khalil)*, 379 B.R. 163, 173 (9th Cir. BAP 2007).  The court finds that Ms. Gardner's omissions were material because Ms. Gardner's omissions related to her personal assets, which are property of her estate, and because in her amended Schedule B, Ms. Gardner listed the items with an admitted total value of $1,100.

**C. Oath Made Knowingly and Fraudulently**

The statutory requirement of "knowingly" "mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law."  *In re Leija*, 270 B.R. at 501.  Put another way, a debtor "acts knowingly if he or she acts deliberately and consciously" when listing her personal property, knowing that the list is incomplete.  *In re Retz*, 606 F.3d at 1198, *citing*, *In re Khalil*, 379 B.R. at 173.  An oath is made fraudulently if a debtor (1) makes a representation, (2) knowing it is false, (3) with the intent and purpose of deceiving creditors.  *See In re Retz*, 606 F.3d at 1198-1199.

Having heard and evaluated Ms. Gardner's testimony at trial, the court finds that that she did not fraudulently omit assets from her schedules with knowledge of the falsity

1  of the schedules and with the intent and purpose to deceive creditors.  The court finds

2  credible Ms. Gardner's testimony that she "honestly did not know [she] omitted anything."

3  Trial Declaration of Susan Gardner at 6, ¶ 36.  At trial, Ms. Gardner testified that she did

4  not disclose the business assets, consisting of the cages, dryers and grooming

5  equipment valued at $500 and dog and cat food/supplies valued at $600, on her original

6  schedules because she misunderstood her bankruptcy attorney's questions in preparing

7  the bankruptcy petition as he only asked her about her income and her personal assets,

8  which she did not then understand at the time should have included her business assets.

9  Trial Testimony of Susan Gardner, October 19, 2012, at 11:39-11:41 a.m.

10        The court observed Ms. Gardner's demeanor in the way she answered the

11  questions posed to her at trial and during her testimony that she did not consciously

12  leave personal property out of her schedules.  Based on Ms. Gardner 's testimony and

13  the other evidence presented at trial, the court finds that she was careless when she did

14  not list these assets on her original schedules and that she did not purposely omit assets

15  from her schedules to deceive her creditors or the court.  *In re Leija*, 270 B.R. at 501.

16  Ms. Gardner did not act in reckless disregard of the truth when she omitted her business

17  assets valued at $1,100.  As Ms. Gardner stated in her trial declaration, during July 2010

18  and after, she experienced a great deal of stress in moving her business to a new

19  location, leaving the prior business of Doggie in the Window behind because she was

20  unable to succeed in that business, and that she had to start over and purchase new

21  supplies and receive donations from friends.  Trial Declaration of Susan Gardner at 6-7,

22  ¶¶ 32-41.  Given these circumstances as well as the nominal value of these business

23  assets, used pet cages, pet dryers and pet grooming equipment and dog and cat

24  food/supplies, the court finds that Ms. Gardner's failure to disclose these items on her

25  original schedules was inadvertent and not for the specific purpose of perpetrating a

26  fraud.  The court makes this finding because Ms. Gardner was truthful when she testified

27  that she honestly did not realize she had omitted her business assets from her

28  bankruptcy petition and that her failure to list these assets was inadvertent.

1        The court observes that Bright Care's arguments that Ms. Gardner's discharge

2    should be barred on grounds that she cannot rely upon advice of counsel as a defense,

3    that her amended schedule does not negate her false oath and that she unlawfully

4    consumed assets subject to its security interest are not without some merit.  *Plaintiff's*

5    *Closing Brief* at 5-9.  However, the court is not persuaded by these arguments because:

6    (1) the critical fact is not that Ms. Gardner was relying upon her counsel's advice, but that

7    she was careless on her schedules because she misunderstood her counsel's questions;

8    (2) while the original schedules were false because assets were omitted, the omission

9    was inadvertent rather than fraudulent or reckless as discussed herein; and (3)  Ms.

10    Gardner did not unlawfully consume Bright Care's collateral because the collateral not

11    previously used in the business of Doggie in the Window was turned over to Dr. Rumm

12    when she vacated the premises of that business and was not otherwise taken by her as

13    discussed herein.

14        Bright Care also argues that the discharge should be barred on grounds that Ms.

15    Gardner failed to disclose that she borrowed money from her mother in the year prior to

16    filing bankruptcy.  *Plaintiff's Closing Brief* at 4.  The court denies the claim based on this

17    ground because the issue of undisclosed loans was not raised in the pleadings, nor was

18    it identified as an issue to be litigated in the joint pretrial order.  *Complaint* at 4, ¶ 17-21;

19    *JPTO*, §F at 5-6 (pretrial order identifying the remaining issues of fact and law to be

20    litigated at trial, superseding the pleadings and governing the course of trial of the cause

21    unless modified to prevent manifest injustice).  Moreover, the claim on this ground should

22    be denied because the court finds that the evidence is insufficient to establish by a

23    preponderance a claim of false oath as to alleged loans not disclosed on the schedules

24    because the trial testimony by Mary Gardner and Susan Gardner relied upon by Bright

25    Care was too sketchy and inconclusive to prove that such loans were made within one

26    year of the bankruptcy petition and were not properly disclosed on the schedules in order

27    to deny Ms. Gardner's discharge under § 727(a)(4).

28

1     Therefore, the court finds that Bright Care has not established by a preponderance

2  of the evidence that Ms. Gardner made these omissions for the specific purpose of

3  perpetuating a fraud or with reckless indifference for the truth as the evidence shows that

4  the debtor was careless or failed to fully understand her bankruptcy attorney's

5  instructions, and the court concludes that Bright Care's claim for relief under

6  § 727(a)(4)(A) should be denied.  *In re Leija,* 270 B.R. at 501.

7     For the foregoing reasons, the court determines that the defendant, Ms. Gardner,

8  is entitled to judgment on both claims of the complaint, and that her debt owed to Bright

9  Care as reflected in the $150,000 promissory note is not excepted from discharge.  This

10  memorandum decision constitutes the court's findings of fact and conclusions of law.

11     The court having issued this memorandum decision adjudicating the matters

12  raised by the second amended complaint hereby vacates the further post-trial hearing in

13  this adversary proceeding set for February 26, 2013 at 2:00 p.m.  No appearances are

14  required on February 26, 2013.

15     The court will enter a separate judgment in favor of defendant Susan Gardner, and

16  against plaintiff Bright Care, concurrently with this memorandum decision.

17     IT IS SO ORDERED.

18  .             ###

Date: February 6, 2013

_____
Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **MEMORANDUM DECISION ON ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND TO BAR DISCHARGE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **February 5, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Michael W Binning      mbinning@binninglaw.com
David A Gill (TR)      mlr@dgdk.com, dgill@ecf.epiqsystems.com;DanningGill@Gmail.com
United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Helane A Simon
3528 Emery St
Los Angeles, CA 90023

Catherine Denevi
Simon & Denevi Attorneys At Law
PMB 138 993 S Santa Fe Ste C
Vista, CA 92083

Susan Ann Gardner
3636 E Anaheim Street
Long Beach, CA 90804

Bright Care Pet Services, Inc.
255 Redondo
Long Beach, CA 90803

15